HEIL COMPANY, Appellant,

v.

Valmarie GRANT et al., Appellees.

No. 872.

Court of Civil Appeals of Texas, Tyler.

Jan. 29, 1976.

Rehearing Denied March 4, 1976.

Gordon H. Rowe, Jr., Gardere, Porter & DeHay, Dallas, for appellant.

Windle Turley, Dallas, Franklin H. Perry, Thompson, Coe, Cousins & Irons, Dallas, for appellees.

DUNAGAN, Chief Justice.

This is a products liability case which involves the doctrines of assumption of risk and misuse, the "Dead Man's" Statute and exemplary damages. Valmarie Grant and her children sued for the death of James Grant (hereinafter referred to as Decedent), their husband and father respectively. The defendant-appellant is the Heil Company, a major manufacturer of hydraulic hoists.

Decedent was killed on February 18, 1972, while assisting his brother, Vernon Grant, in making repairs on Vernon Grant's dump truck. The dump truck was equipped with a telescopic sleeve hoist designed and sold by the Heil Company for the purpose of raising the bed of the truck. The hoist is operated by a mechanism consisting basically of a control valve with levers inside the cab, a hydraulic pump and a partially exposed "pullout" cable which runs lengthwise beneath the bed. The injection of oil into the telescopic sleeve raises the bed until the pullout cable becomes taunt and pulls a valve in the control assembly into a neutral position. The bed is lowered by pushing the valve into another position. This is normally accomplished with the levers inside the cab but can occur when the exposed portion of the pullout cable is struck.

Decedent and Vernon were working beneath the raised bed when it somehow descended. Vernon jumped away but Decedent did not. Heil Company's engineer found no malfunction in the hoist mechanism and concluded that the pullout cable had been tripped. Immediately before the accident, Vernon told Decedent that if he hit the pullout cable, the bed would come down. This portion of Vernon's testimony was preserved in appellant's bill of exception as it was excluded under the Dead

Man's Statute. In this same bill, Vernon testified that he would not normally work under the raised bed without bracing it with some wooden blocks which he had at home.

Plaintiffs sued the Heil Company under a theory of strict liability for defective design of the hoist mechanism and for failure to warn of the hazard. Plaintiffs alleged that, as a direct and proximate result of the wrongful death of James Grant, they had suffered a loss of his support, guidance and companionship. They further sought recovery for their mental anguish resulting from their observations upon their arrival at the scene immediately after the accident. Finally, they sought recovery in the form of exemplary damages. The Heil Company answered with affirmative defenses and impleaded Vernon Grant seeking contribution and indemnity. Vernon's motion for instructed verdict was sustained.

The jury found that the producing causes of the death were: (1) the pullout cable which was defectively designed because it was not accompanied by adequate warnings (Special Issues 1 through 3); (2) the control valve, which was defectively designed for the same reason (Special Issues 4 through 6); (3) Heil Company's failure to supply a brace (Special Issues 7 and 10); and (4) Heil Company's failure to provide bracing instructions (Special Issues 8 and 10). The damages awarded pursuant to these findings will be discussed subsequently.

The Heil Company pleaded, offered evidence of and requested Special Issues on the defenses of assumption of risk and misuse. The trial court, applying the Dead Man's Statute, excluded that portion of Vernon Grant's testimony which related to those defenses and refused to submit Special Issues thereon since there was no other evidence to support such issues. Heil Com-

pany's primary contention before this court is that the exclusion of Vernon Grant's testimony was harmful error because that testimony was admissible and established or raised fact issues of those defenses. Plaintiffs respond that (1) even if the exclusion was erroneous, it was not harmful, and (2) Vernon Grant's testimony was properly excluded. We will discuss these contentions in the order set forth by plaintiffs.

## ASSUMPTION OF RISK

■ Plaintiffs' Reply Point I is that the issue of assumption of risk could not have been submitted to the jury even if Vernon Grant's testimony had not been excluded. The arguments under this point are threefold. Plaintiffs first contend that "no evidence raised the necessary elements of assumption of risk."[1] The theory of the assumption of risk defense is that a person may not recover for an injury received when he voluntarily exposes himself to a known and appreciated danger. *Halepeska v. Callihan Interests, Inc.*, 371 S.W.2d 368, 379 (Tex.1963). The doctrine of assumed risk is harsh and will not be extended. *Ellis v. Moore*, 401 S.W.2d 789, 794 (Tex.1966). Clearly, if there was no evidence of one or more of the elements of the doctrine, any error in excluding the portions of Vernon Grant's testimony relating thereto was harmless.

Plaintiffs contend that Vernon Grant's warning to Decedent ("I stated . . . that if he hit the cable, the bed would come down") did not constitute evidence that Decedent "knew" of the risk. Plaintiffs argue that Decedent might not have heard, understood or remembered the warning and that Vernon Grant's testimony was merely evidence that Decedent *could* have known of the risk.

■ An injured person's knowledge of a dangerous condition or defect is measured

---

1. In determining this contention, we must review the evidence in the light most favorable to that issue. *Rourke v. Garza*, 530 S.W.2d 794 (Tex.1975); Calvert, *"No Evidence"* and *"Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361, 364 (1960).

subjectively; i. e., by that person's actual, conscious knowledge. *Massman-Johnson v. Gundolf,* 484 S.W.2d 555, 557 (Tex.1972). The fact that the injured person *should have known* of the danger will not support the assumption of risk defense. *Halepeska v. Callihan Interests, Inc.,* supra. Sometimes, however, that person may know such facts as to be charged with knowledge of the danger. *Halepeska v. Callihan Interests, Inc.,* supra. This standard would be applied when it was difficult or impossible to determine the state of the injured person's mind; as it was in the instant case of a fatal injury. The "actual knowledge or charged knowledge" test has been applied in determining the strict liability of a supplier of defective products. See *Rourke v. Garza,* 530 S.W.2d 794 (Tex.1975). The *Rourke* case held that an employer's knowledge of the defect in a product would not discharge the supplier's duty to warn the injured employee. However, that case did not hold that the assumption of risk defense would be unavailable to the supplier if the injured employee had been warned. The injured person was warned of the risk, but was held not to have assumed that risk, in *Messick v. General Motors Corp.,* 460 F.2d 485 (5th Cir. 1972). However, that person's "knowledge" of the risk was undisputed and the holding was based upon a finding that the voluntary encounter of the known and appreciated risk was "reasonable." This insertion of an "unreasonability" element into the assumption of risk doctrine was expressly disapproved in *Henderson v. Ford Motor Co.,* 519 S.W.2d 87, 91 (Tex. 1974).

Whether an injured person actually knew of the danger is peculiarly within the province of the jury. *Hillman-Kelley v. Pittman,* 489 S.W.2d 689, 692 (Tex.Civ.App.—El Paso 1972, n. w. h.). Here, there was some evidence from which the jury could have found that Decedent "knew" of the danger, to-wit: the fact that he had been told of the effect of hitting the pullout cable. Although the jury could also have found that Decedent did not know of the danger because he did not hear, understand or remember the warning, we are not able to say, as a matter of law, that he did not know of that danger.

Plaintiffs argue that even if Decedent had knowledge of some danger, there is no evidence that he knew of the specific defect involved. Knowledge of the general hazard involved in operating a punch-press machine will not support the assumption of risk defense. *Rhoads v. Service Machine Co.,* 329 F.Supp. 367 (E.D.Ark.1971). The general hazard in the instant case was working beneath the raised bed of the dump truck. Vernon Grant and Heil Company's engineer both concluded that the bed descended because the pullout cable was tripped. This evidence indicates that the specific danger was that striking the pullout cable would cause the bed to descend. The jury, upon consideration of Vernon Grant's testimony, could have found that Decedent knew of this specific hazard. Plaintiffs also contend that the requisite knowledge must be of a "defect" and that "knowledge that a phenomenon will occur in a product . . . is not knowledge that the product is dangerously defective." Plaintiffs rely upon the use of the word, "defect," in *Henderson v. Ford Motor Co.,* supra, 519 S.W.2d at 89. It is clear, however, that the assumption of risk defense is premised upon knowledge of the dangerous condition of a product rather than recognition of its defectiveness. *See: Henderson v. Ford Motor Co.,* supra, at 91; *Hillman-Kelley v. Pittman,* supra, 489 S.W.2d at 693, and *J. & W. Corporation v. Ball,* 414 S.W.2d 143, 146 (Tex.1967).

Plaintiffs argue that even if Decedent knew of the danger of the pullout cable, there is no evidence that he knew of the other dangerous defects, to-wit: the defectively designed control valve; the failure to supply a support brace; and the failure to instruct as to proper bracing procedures. These defects may well have been

producing or proximate causes of the death in that (1) but for the defects, the death might not have occurred, and (2) the death was a foreseeable result of the defects. *East Texas Theatres, Inc. v. Rutledge*, 453 S.W.2d 466, 468 (Tex.1970). In our opinion, however, all of the above producing causes were part of the same danger. The assumption of risk defense is based upon the injured person's awareness of the danger of injury rather than an awareness of the producing causes of the injury. Since there was some evidence that Decedent knew of the specific danger in hitting the pullout cable, plaintiffs' argument is without merit.

■ The danger encountered must be both known and appreciated to raise the assumption of risk defense. *Ellis v. Moore*, supra. Again, the test is subjective. *Massman-Johnson v. Gundolf*, supra. We look for some evidence that Decedent actually appreciated the risk or was in possession of facts from which he would be legally charged with appreciation of the danger. *Halepeska v. Callihan Interests, Inc.*, supra, 371 S.W.2d at 379. If by reason of age, or lack of information, experience, intelligence or judgment, Decedent did not understand the risk involved, he will not be taken to have assumed that risk. Restatement (Second) of Torts, Section 496D, comment c.

■ Decedent was approximately 53 years old at the time of the accident. His formal education had stopped at the 5th or 6th grade but he had been to a trade or mechanical school. He had been a sergeant in the army. Decedent had previously made a living by building airplanes, moving houses and doing construction work. He had not previously worked upon Vernon Grant's dump truck.

Plaintiffs argue that Decedent, after hearing Vernon Grant's warning, might have thought that the bed would descend only until the cable was released. Plaintiffs' expert testified that a construction laborer who had not previously owned or operated a dump truck probably would not appreciate the hazard from looking at the hoist mechanism. Heil Company's engineer testified that he had been involved in the hoist industry for 4 years before he became completely aware that a dump bed would descend when the pullout cable was struck.

There is some evidence that Decedent might not have appreciated the danger of hitting the pullout cable. However, by reason of Decedent's information, age and experience, we conclude that there was some evidence of probative force that he did appreciate that danger. Thus, an issue for the jury exists.

Plaintiffs' final point in support of their contention of no evidence of the necessary elements of the assumption of risk defense is that Decedent's encounter of the risk was not shown to have been voluntary. A voluntary encounter means by free and intelligent choice. *Henderson v. Ford Motor Co.*, supra.

Plaintiffs argue as follows: that there was no evidence that Decedent did not forget the warning; that there was no evidence that the tripping of the pullout cable was not accidental; that Decedent chose to encounter the risk in the face of unreasonable alternatives; or that Decedent was exercising a legal right when he encountered the danger. We have thoroughly considered each of these arguments and find them to be without merit. We conclude that there was some evidence that would support a jury finding that Decedent's encounter with the risk was by free and intelligent choice.

■ Plaintiffs' second contention under their Reply Point I is that any error in excluding the testimony of Vernon Grant which related to assumption of risk was harmless because that defense is inapplicable when strict liability is based upon a failure to warn of a dangerous condition. Plaintiffs rely upon statements to the effect that when there is a breach of the duty

to warn, there is no assumption of the risk. *See: McClanahan v. California-Spray Chemical Corp.,* 194 Va. 842, 75 S.E.2d 712, 725 (1953); *Wright v. Carter Products, Inc.,* 244 F.2d 53, 60 (2d Cir. 1957); R. Keeton, *Assumption of Risk in Products Liability Cases,* 22 La.L.Rev. 122, 145 (1961). These statements were made in situations in which no warning had been given to the injured person. The function of the warning is to give that person knowledge and an opportunity to appreciate the danger. *Ellis v. Moore,* supra, 401 S.W.2d at 793. The supplier of a defective product is usually in the best position to supply this warning but there is no reason why the warning cannot come from another source. "One who voluntarily chooses to use a chattel with a complete realization, *regardless of how it was acquired,* of the risks to which he thus exposes himself voluntarily assumes such risks . . ." 1 Hursh & Bailey, *American Law of Products Liability 2d,* sec. 2:107 (Emphasis added.) The issue of assumption of risk was held to have been properly submitted, even though the jury found that the supplier of a defective product had failed to warn the injured user of the danger, in *Hillman-Kelley v. Pittman,* supra, 489 S.W.2d at 692. We hold that since Vernon Grant may have warned Decedent of the danger, the jury's finding of Heil Company's failure to do so did not render the assumption of risk defense inapplicable.

■ Plaintiffs' final argument under Reply Point I is that any error in excluding evidence of assumption of risk was harmless because that defense is inapplicable when strict liability is based upon the defective design of a product being used in a manner reasonably foreseeable to the supplier. Plaintiffs argue that the supplier is in the best position to discover a design defect and should not be permitted to avoid liability on the ground that the injured person made a foolish judgment to encounter the danger. The thrust of this argument is that assumption of risk *should* not

be applicable in any case when strict liability is based upon the defective design of a product. The defense of assumption of risk was held available in such a case in *Rourke v. Garza,* supra, 530 S.W.2d 794. Plaintiffs' contention is overruled.

## MISUSE

The Heil Company contends that it was a misuse of the truck to work between the bed and the chassis while the bed was in a raised position and was not blocked. Appellees' Reply Point II is that, even considering the excluded portions of Vernon Grant's testimony, there was no evidence of misuse and, therefore, no harmful error in excluding those portions of his testimony relating thereto.

■ Suppliers of products are not liable for injuries resulting from the abnormal use of that product. Restatement (Second) of Torts, Section 402A, comment h. The misuse defense has been adopted in Texas. *See Rourke v. Garza,* supra, 530 S.W.2d 794. A product is not "misused" merely because the supplier intended that it be used in a different manner; the supplier must show that the use which caused the injury was not reasonably foreseeable. *Otis Elevator Co. v. Wood,* 436 S.W.2d 324, 329 (Tex.1968). The Heil Company's recognition of the inapplicability of the "intended use" standard is apparent from its request for a Special Instruction that ". . . the term 'misuse' means a use which was not reasonably expected by or reasonably foreseeable to the Defendant Heil Company."

■ Plaintiffs contend that the misuse defense was negated by evidence which showed that the Heil Company could and did foresee Decedent's use of the truck. This contention misconceives the scope of our review of a "no evidence" point since

we must ignore such evidence.[2] However, we are unable to find any evidence of probative force indicating that working beneath the raised bed without bracing it was an unforeseeable use. Vernon Grant's testimony, in the light most favorable to the establishment of the misuse defense, merely showed that he considered that to be a dangerous and abnormal use. Abnormal uses are not necessarily unforeseeable. Vernon Grant's testimony that *he* would normally brace the raised bed before working beneath it was not evidence that such a use was not reasonably foreseeable. We conclude that any error in excluding this portion of his testimony was harmless under Tex.R.Civ.P. 434; we now determine the propriety of the exclusion of that testimony which could have established the assumption of risk defense.

## THE DEAD MAN's STATUTE

Heil Company contends that the Dead Man's Statute[3] was inapplicable because Plaintiffs sought recovery only in their own right and therefore judgment was not rendered for or against them as the heirs or legal representative of Decedent. The argument is that the pleadings for compensation for the loss of support and guidance by Decedent, for mental anguish and for exemplary damages set up a cause of action under the Wrongful Death Act[4] but did not set up a cause of action under the Survival Statute.[5]

■■■■ The Wrongful Death Act permits recovery by a decedent's surviving spouse, children and parents for losses *they* sustained by reason of the death. *Norman v. Valley Gin Co.,* 99 S.W.2d 1065, 1067 (Tex.Civ.App.—Beaumont 1936, writ ref'd). The Survival Statute permits recovery for damages sustained *by the decedent. Landers v. B. F. Goodrich Co.,* 369 S.W.2d 33, 35 (Tex.1963). This statute is so named because it provides that causes of action for injuries resulting in death shall not abate by reason of the death but shall survive to the heirs and legal representatives of the decedent's estate. The Dead Man's Statute has been held inapplicable in actions brought under the Wrongful Death Act rather than for rights inherited from the decedent. *See Canales v. Bank of California,* 316 S.W.2d 314, 318–319 (Tex.Civ.App. —Eastland 1958, writ ref'd n.r.e.); *Wallace v. Stevens,* 74 Tex. 559, 12 S.W. 283 (1889).

Plaintiffs respond that the Dead Man's Statute was applicable because, in seeking exemplary damages, they acted as the heirs and legal representative of Decedent. Plaintiffs argue that Decedent's children obtained their capacity to invoke the Dead Man's Statute by suing for exemplary damages under the Texas Constitution and that Decedent's widow obtained that capacity under the Survival Statute by seeking exemplary damages.

■■■ Plaintiffs point out that their claim for exemplary damages was in no way dependent upon the provision therefor in the Wrongful Death Act but was based ultimately upon the Constitution. "Every person, corporation, or company, that may

---

**2.** In determining this contention, we must review the evidence in the light most favorable to the issue of misuse. *Rourke v. Garza,* supra, 530 S.W.2d 794; Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Texas L.Rev. 361, 364 (1960).

**3.** Tex.Rev.Civ.Stat.Ann. art. 3716

"In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

**4.** Tex.Rev.Civ.Stat.Ann. arts. 4671–4678.

**5.** Tex.Rev.Civ.Stat.Ann. art. 5525.

commit a homicide, through willful act, or omission, or gross neglect, shall be responsible, in exemplary damages, to the surviving husband, widow, *heirs of his or her body* . . . ." Tex.Const. art. XVI section 26 (emphasis added). Recoveries of exemplary damages in wrongful death cases are limited to that class of people set forth in the constitutional provision. *Scoggins v. Southwestern Electric Service Co.,* 434 S.W.2d 376, 380 (Tex.Civ.App.—Tyler 1968, writ ref'd n.r.e.). Plaintiffs conclude that judgment for the recovery of exemplary damages was necessarily rendered for the children *as heirs.* The application of the Dead Man's Statute, however, depends upon whether Decedent's children recovered these damages in their own right or inherited that right from Decedent. *Wallace v. Stevens,* supra. The fact that a decedent's heirs may recover exemplary damages does not establish this right as one belonging to and inherited from the decedent. Although the derivation of the right to recover exemplary damages for wrongful death was not discussed, a widow and her children did not invoke the Dead Man's Statute when suing for such damages in *Wallace v. Stevens,* supra.

▪ Plaintiffs urge that Decedent's widow prosecuted her claim for exemplary damages as his legal representative under the Survival Statute. Their contention that the cause of action for exemplary damages belonged to Decedent himself relies upon *Houston-American Life Insurance Co. v. Tate,* 358 S.W.2d 645, 649 (Tex.Civ.App.—Waco 1962, n.w.h.). In that case, however, the exemplary damages were based on unreasonable collection efforts and the court held that the Legislature had not excluded such a cause of action from the Survival Statute. The recovery of exemplary damages for wrongful death by the surviving spouse and heirs has been expressly provided for in Tex.Const. art. XVI section 26 and Tex.Rev.Civ.Stat.Ann. art. 4673. The inclusion of such a cause of action in the Wrongful Death Act indicates that it is one belonging to the statutory beneficiaries. Moreover, the Legislature would be without authority to expand the class of people entitled to recover exemplary damages for wrongful death to include the decedent's legal representative. *Scoggins v. Southwestern Electric Service Co.,* supra. We conclude that the claim for exemplary damages by plaintiffs did not invoke the Dead Man's Statute.

▪ Plaintiffs next argue that they sought recovery for Decedent's conscious pain and suffering, a cause of action under the Survival Statute, and thereby invoked the Dead Man's Statute. Plaintiffs admit that they did not plead this cause of action but contend that the Heil Company waived this pleading defect by failing to object to the introduction of testimony raising this issue. The testimony in question was that of Decedent's widow and two of his children. Mrs. Grant testified that she could hear Decedent breathing heavily when she ran to the dump truck. James Grant, Jr., and Jerry Grant testified as to Decedent's movements and expressions observed by them when he was pinned beneath the dump bed. This testimony, however, was offered for the purpose of showing the mental anguish of the witnesses rather than Decedent's pain and suffering. This purpose is indicated by the subsequent testimony of these witnesses about hysteria and upsetting mental pictures of the accident. Contrary to plaintiffs' contention, Heil Company did object to testimony about Decedent's pain on the ground that the suit had been brought under the Wrongful Death Act and not on behalf of the estate for Decedent's pain. That objection was overruled when Plaintiffs responded that the testimony related to the state of mind of the witness. We are of the opinion that plaintiffs did not seek recovery for Decedent's pain.

▪ Plaintiffs contend that even if they did not advance a cause of action as the heirs and legal representative of Decedent,

the Dead Man's Statute was still applicable. They argue that the judgment which was rendered bars their future ability to sue Heil Company as heirs and legal representative and, therefore, was rendered against them as such.

■ The judgment in a wrongful death action does not necessarily bar a subsequent suit on behalf of the estate. *Landers v. B. F. Goodrich Co.,* supra. In light of our decision to reverse and remand this case for a new trial, plaintiffs clearly are not barred from asserting any applicable cause of action previously omitted.

■ Plaintiffs' final argument for the applicability of the Dead Man's Statute is premised on the assumption that this action was prosecuted in a dual capacity; i. e., that plaintiffs could invoke the Dead Man's Statute in one capacity while in the other capacity, they could not. We are unable to discover any capacity in which judgment was rendered for or against plaintiffs as the legal representative or heirs of Decedent. We conclude that the trial court erred in excluding portions of Vernon Grant's testimony under the Dead Man's Statute.

■ The trial court's judgment in favor of Decedent's widow and children is reversed and that cause is remanded for a new trial. With one exception, Heil Company's remaining points of error relating to this portion of the judgment have either been waived at oral argument or made moot by this decision. The Heil Company's contention that exemplary damages are not recoverable in a strict products liability suit for wrongful death should be answered to guide the trial court in the event of another trial of this cause.

Exemplary damages may be recovered for a wrongful death resulting from a willful act or omission or gross negligence. Tex.Const. art. XVI section 26. These damages have been allowed in products liability actions in other jurisdictions. *See : Moore v. Jewel Tea Co.,* 116 Ill.App.2d 109, 253 N.E.2d 636 (1969) *aff'd* 46 Ill.2d 288, 263 N.E.2d 103 (1970); *Drake v. Wham-O Manufacturing Co.,* 373 F.Supp. 608 (E.D.Wis. 1974). In the latter case, the court held that exemplary damages were available in a products liability action for the death of the user; the court noted that Wisconsin law ties the availability of punitive damages to the facts proved rather than the formal theory of recovery alleged. *Drake v. Wham-O Manufacturing Co.,* supra, at 611. Exemplary damages were not allowed in the products liability suit of *Kritser v. Beech Aircraft Corp.,* 479 F.2d 1089 (5th Cir. 1973). However, the court indicated that such damages would have been available under the Texas Constitution if the elements of Article XVI, section 26 had existed. *Kritser v. Beech Aircraft Corp.,* supra, at 1091, 1097. We believe that exemplary damages may be recovered under that provision of the Texas Constitution in a strict liability action for the death of the user of a defective product.

The trial court instructed a verdict in favor of Vernon Grant on Heil Company's claim against him for contribution and/or indemnity. Heil Company contends that there was some evidence of probative force that Vernon Grant breached a duty of care to Decedent by permitting him to work beneath the raised bed without a brace.

■ ■Even if Vernon Grant were negligent towards Decedent, Heil Company could not recover contribution and/or indemnity from its co-tortfeasor. The test of whether the loss should be shifted from one tortfeasor to another is to consider the one as a plaintiff suing the other in tort; Then, determine whether such one as plaintiff, although guilty of a wrong against a third person, is nonetheless entitled to recover against his co-tortfeasor. *Gulf, C. & S.F. Ry. v. Bliss,* 368 S.W.2d 594, 596 (Tex.1963); *Austin Road Co. v. Pope,* 147 Tex. 430, 216 S.W.2d 563, 565 (1949). Vernon Grant's duty ran to Decedent and not to the Heil Company. The trial court properly in-

structed a verdict in his favor and that portion of the judgment is affirmed.

Affirmed in part and reversed and remanded in part.

## ON MOTION FOR REHEARING

The Heil Company, in its Motion for Partial Rehearing, complains of this court's affirmance of the verdict instructed in favor of Vernon Grant. The Heil Company asserts error in the holding that it could not recover contribution from Vernon Grant even if he were negligent towards Decedent. We have reviewed the law regarding contribution and indemnity and remain convinced of the correctness of our judgment.

 Article 2212, Tex.Rev.Civ.Stat. Ann., permits enforced contribution among joint tortfeasors who are in pari delicto, but does not abrogate the common law rule as to the rights of wrongdoers who are not in pari delicto. *Austin Road Co. v. Pope,* supra. When joint tortfeasors are not equally guilty, although both are liable to a third person, as between themselves the blameless should be allowed indemnity. *Austin Road Co. v. Pope,* supra. Joint tortfeasors are not in pari delicto when the injury resulted from a violation of the duty one owes the other. *Austin Road Co. v. Pope,* supra.

Even if Vernon Grant were negligent in permitting Decedent to work beneath the raised bed without a brace, the death resulted, at least in part, from the defective design of the hoist mechanism. This defective design constituted a breach of the Heil Company's duty to both Vernon Grant and Decedent. Thus, as between the joint tortfeasors, Vernon Grant would have been entitled to indemnity from the Heil Company and would not have been liable to the Heil Company for contribution.

The Motion is respectfully overruled.