**Larkin FOSTER, Plaintiff,**

v.

**FORD MOTOR COMPANY, Defendant-Third Party Plaintiff, Appellant,**

v.

**Horace F. CREW and Sonny Newkirk, Third-Party Defendants-Appellees.**

**Nos. 77–2352, 77–2770.**

United States Court of Appeals, Fifth Circuit.

May 15, 1980.

Royal H. Brin, Jr., Dallas, Tex., for defendant-third party plaintiff, appellant.

Scott Baldwin, Marshall, Tex., Nicholas H. Patton, Texarkana, Ark., for Foster.

Norman C. Russell, Texarkana, Ark., Herbert Boyland, Longview, Tex., for Crew & Newkirk.

Before GOLDBERG, FAY and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

Larkin Foster, while operating a Ford 5000 tractor, suffered personal injuries when a bale of hay slid off of the hayfork which had been attached to the tractor's front-end loader. Foster brought this diversity suit against Ford seeking damages

for the personal injuries. Ford filed a third-party complaint against Horace Crew, Foster's employer, and W. L. (Sonny) Newkirk, the builder of the hayfork, asking for indemnification or, alternatively, contribution.

The jury found Ford strictly liable in tort[1], and awarded a verdict for Foster in the amount of $2,000,000, which was reduced by remittitur to $1,500,000. Ford's third-party action never reached the jury, the court having directed a verdict in favor of Crew and Newkirk at the close of all the evidence.

From this judgment, only one appeal is before us[2]: Ford appeals the directed verdict dismissing with prejudice its claim against Crew and Newkirk for indemnity or contribution. This appeal is controlled by the substantive law of Texas.

### FACTS

Crew purchased the Ford 5000 tractor, manufactured and sold by Ford, equipped with a hydraulically controlled front-end loader. Subsequently, Crew employed Newkirk, a welder and owner of a repair shop, to design and build a hayfork. Crew explained to Newkirk that the hayfork would be attached to the front-end loader of a tractor[3] for use in lifting round bales of hay weighing 1500 pounds three or four feet off of the ground and onto a lowboy trailer.

Newkirk had built a "few" haylifting attachments in the past. Most of these attachments were designed for use at the rear end of tractors and, because of the construction of those tractors, could only be raised three feet off of the ground. Newkirk's design of Crew's hayfork was "basically the same" as those rear-end attachments. Newkirk did not consult with Crew or Ford concerning the hayfork's design.[4]

Newkirk built the hayfork with two metal arms, five feet long, connected to a backplate, three feet tall. The hayfork was designed to tilt up and down; the tilt was controlled by the hydraulic system on the front-end loader. Newkirk's design did not include a clamp or other safety device to secure bales of hay to be lifted by the hayfork.

After the hayfork was built, Crew took it from Newkirk's shop and had it installed onto the front-end loader.

Foster safely lifted 80 to 85 bales of hay three or four feet off of the ground and onto a lowboy trailer[5] before the accident occurred. The accident happened when the front-end loader, while lifting a 1500 pound bale, did not stop after climbing three or four feet, but continued on to the top of its stroke, ten feet off of the ground. At that height, the hay rolled over the backplate of the hayfork, which was tilted up, and fell onto Foster's head. Foster testified that the front-end loader reached the top of its stroke because the hydraulic valve on the

---

1. The question of Ford's strict liability was submitted to the jury on the theory that the front-end loader was defective. Plaintiff contended that the loader was defective in that it was not equipped with an overhead guard or cab which could prevent objects from falling on the operator; that the controls provided for operation of the loader were improperly located and did not automatically disengage when released; and, that the owner's manual did not adequately warn of potential dangers associated with use of the machine. App. at 1026–27.

2. Originally, Ford appealed the judgment in favor of Foster, and Foster appealed the trial court's order of remittitur. Following a settlement between Foster and Ford, both of these appeals were dismissed.

3. Crew did not inform Newkirk that Ford was the manufacturer of the tractor to which the hayfork would be attached.

4. At the time he purchased the tractor, Crew also purchased a bucket authorized by Ford for attachment to the front-end loader. Crew gave the bucket to Newkirk, and Newkirk used the dimensions of the bucket in computing the measurements for the hayfork.

5. The bed of the lowboy trailer was less than three feet above the ground. Hence, it was only necessary for Foster to raise the loader and hayfork three to four feet. At that height, the hayfork could be tilted down, and the bale would slide onto the trailer bed.

tractor controlling the height of the loader got stuck.[6]

## INDEMNITY

■ Texas courts apply an "imaginary law suit" test in deciding whether one tortfeasor is entitled to indemnity from another. The test, authored in *Austin Road Co. v. Pope*, 147 Tex. 430, 216 S.W.2d 563, 565 (1949), provides:

> In order to determine whether the loss should be shifted from one tortfeasor to another the proper approach is to consider the one seeking indemnity as though he were a plaintiff suing the other in tort, and then determine whether such a one as plaintiff, though guilty of a wrong against a third person, is nevertheless entitled to recover against his co-tortfeasor.

*Accord, General Motors Corp. v. Simmons*, 558 S.W.2d 855, 859 (Tex.1977); *Butler v. Henry*, 589 S.W.2d 190, 193 (Tex.Civ.App. 1979, writ ref'd n. r. e.); *Vergott v. Deseret Pharmaceutical Co., Inc.*, 463 F.2d 12, 16–17 (5th Cir. 1972) (applying Texas law).

[2] Ford fails the test: it would not recover in an imaginary tort suit against Crew and Newkirk. Although the conduct of the third-party defendants in connection with the hayfork may have violated a duty owing to Foster[7], Ford has not proved that their conduct violated a duty owing to Ford. *See, e. g., General Motors Corp. v. Simmons*, *supra*, 558 S.W.2d at 860–61 (no indemnity because indemnitee did not breach duty running to indemnitor); *Vergott v. Deseret Pharmaceutical Co., Inc.*, *supra*, 463 F.2d at 16–17 (same). Accordingly, we affirm the district court's rejection of Ford's plea for indemnity.[8]

## CONTRIBUTION

■ In Texas, the right of contribution among joint tortfeasors is solely a statutory right. *See Austin Road Co. v. Pope, supra*, 216 S.W.2d at 564–65. The statute applicable to this case is Article 2212, *Tex.Rev.Civ. Stat.Ann.* (Vernon 1971),[9] which provides:

> Art. 2212. Contribution between tortfeasors
>
> Any person against whom, with one or more others, a judgment is rendered in any suit on an action arising out of, or based on tort, except in causes wherein the right of contribution or of indemnity, or of recovery, over, by and between the defendants is given by statute or exists under the common law, shall, upon payment of said judgment, have a right of action against his co-defendant or co-defendants and may recover from each a sum equal to the proportion of all of the defendants named in said judgment rendered to the whole amount of said judgment. . . .

■ In order to obtain contribution against Newkirk and Crew under Article 2212, Ford must establish liability on their part to Foster. *See Austin Road Co., supra*, 216 S.W.2d at 565–66. Ford contends that Newkirk and Crew were liable to Foster under theories of strict liability and negligence because the hayfork built by Newkirk at the instance of Crew was negligently designed and defective. The district court held that Ford failed to present sufficient evidence to establish a *prima facie* case against Newkirk or Crew under any theory, and granted a directed verdict in their favor.

■ We agree with the district judge that the question of Crew's strict liability

---

**6.** The evidence was in conflict as to the extent operator error contributed to the accident. Even with the loader raised above his head, it was at least mechanically feasible for Foster to prevent the hay from falling by altering the tilt of the hayfork.

**7.** See discussion of contribution below.

**8.** In any event, at oral argument and in the court below, app. at 949, counsel for Ford apparently abandoned Ford's claim for indemnity.

**9.** Texas has two contribution statutes, Article 2212 and Article 2212a, *Tex.Rev.Civ.Stat.Ann.* (Vernon Supp.1980). Article 2212 applies to cases such as this where one of the joint tortfeasors (*i. e.*, Ford) is strictly liable. Article 2212a applies only where all of the joint tortfeasors are negligent. *General Motors Corp. v. Simmons, supra*, 558 S.W.2d at 862; *Lubbock Manufacturing Co. v. Perez*, 591 S.W.2d 907, 923 (Tex.Civ.App.1979).

should not have gone to the jury; but, we hold that the question of Crew's negligence as well as the questions of Newkirk's negligence and strict liability should have gone to the jury under the rule of *Boeing Company v. Shipman,* 411 F.2d 365 (5th Cir. 1969) (en banc).[10] Accordingly, we reverse the district court's directed verdict dismissing Ford's third-party action for contribution and remand for a new trial against Crew and Newkirk.[11]

### 1. *Newkirk—Strict Liability*

Ford's contention that Newkirk was strictly liable to Foster is grounded on

**10.** In diversity cases, federal courts apply a federal rather than a state test for determining whether the evidence is sufficient to defeat motions for a directed verdict and for a judgment notwithstanding the verdict. *Boeing Company, supra,* 411 F.2d at 368. *Boeing* sets out the test as follows:

On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n. o. v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.
411 F.2d at 374–75.

**11.** In addition to the contribution and indemnity questions, Ford raises several other issues on appeal. Most of these issues we do not reach either because they relate only to Ford's now dismissed appeal against plaintiff Foster, *see* n. 2, *supra,* or because they are mooted by our holding requiring a new trial. We do, however,

Newkirk's allegedly defective design of the hayfork. Ford's criticism of the hayfork's design is that it does not include a high enough backplate or a clamp to secure bales of hay that might be lifted above the tractor operator's head.

 Strict liability actions in Texas are governed by the rule stated in *Restatement (Second) of Torts* § 402A (1966). *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787, 788–90 (Tex.1967). Section 402A provides:

402 A. Special Liability of Seller of Product for Physical Harm to User or Consumer

discuss one issue that may recur at the new trial. Ford claims that the trial court erred in excluding evidence of post-accident modifications to the hayfork made by Newkirk at the instruction of Crew which, if undertaken prior to the accident, would have prevented Foster's injuries. Ford offered the evidence for the purpose of proving that it was feasible for the third-party defendants to make a safer hayfork. Crew and Newkirk contend that the trial court's exclusion of the evidence was proper because they both admitted at trial that the hayfork could have been designed so as to prevent bales of hay from falling onto the operator.

If, on remand, Ford again proffers evidence of post-accident modifications, the trial court should state on the record its grounds for admitting or excluding the evidence. The court's ruling should be in light of Fed.R.Evid. 403 (exclusion of needlessly cumulative evidence) and 407 (evidence of subsequent remedial measures for the purpose of proving feasibility is admissible only "if controverted"). We note that a conflict exists among the circuits as to whether Rule 407 applies where evidence of subsequent remedial measures is offered to prove a party, such as Newkirk, strictly liable. *Compare Farner v. Paccar, Inc.,* 562 F.2d 518, 528 (8th Cir. 1977) (Rule 407 does not apply to strict liability actions); *Robbins v. Farmers Union Grain Terminal Association,* 552 F.2d 788, 793 (8th Cir. 1977) (same) *with Knight v. Otis Elevator Co.,* 596 F.2d 84, 91 (3d Cir. 1979) (applying Rule 407 in strict liability case without discussing conflicting authority); *Roy v. Star Chopper Company, Inc.,* 584 F.2d 1124, 1134 (1st Cir. 1978), *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979) (same). Even if the court determines that Rule 407 does not apply with regard to Ford's strict liability claim against Newkirk, the admission of the evidence in question must be considered in light of Rule 403.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

 (a) the seller is engaged in the business of selling such a product, and

 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

 (a) the seller has exercised all possible care in the preparation and sale of his product, and

 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

In applying section 402A to an action based on defective product design, the crucial question is whether the product "is unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use." *Turner v. General Motors Corp.*, 584 S.W.2d 844, 847 n. 1 (Tex.1979). A product may be found to have an unreasonably dangerous design because of the absence of a safety device. *Gonzales v. Caterpillar Tractor Co.*, 571 S.W.2d 867 (Tex.1978).

Uncontradicted evidence shows that the hayfork was designed, and intended by all parties, to be used for the purpose of lifting round bales of hay three or four feet off of the ground and onto a lowboy trailer, and that the hayfork was safe for use if limited to that height. This evidence, Newkirk urges, dictates a holding that the hayfork was not unreasonably dangerous for its intended use. We disagree. A manufacturer's duty as to product design is "to guard against reasonably foreseeable risks of harm that are engendered by the intended use of his product." *Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 328 (Tex.1968); *Ford*

*Motor Co. v. Russell & Smith Ford Co.*, 474 S.W.2d 549, 557–58 (Tex.Civ.App.1971); R. Hirsh and H. Bailey, 2 *American Law of Products Liability* § 9:3 (2d ed. 1974). Thus, the issue is not whether the hayfork was safe at the height of three or four feet, but, rather, whether the possibility that the hayfork would be lifted above the operator's head was a reasonably foreseeable risk involved in the loading of hay onto the lowboy trailer.

Newkirk knew that the hayfork would be attached to a front-end loader and used in lifting bales of hay onto a trailer. His testimony also permits the inference that he knew that the loader could extend above the tractor operator's head.[12] With this knowledge, according to Walter Sewell, Supervisor of Vehicle Development for Ford's Tractor Division, Newkirk could foresee that the operator might inadvertently allow the loader and hayfork to climb above his head. Sewell testified:

 Well, to depend on a man restraining the movement of those loader arms only three feet off the ground is something that isn't going to happen every day around the clock. At some time or the other he is going to be distracted, he is going to forget, or he is going to be confused, and that is going to get just a little bit above the point of no return, and he is going to have a bale hit him on the head.

App. at 695. George Greene, Foster's engineering expert, testified that Ford could foresee that an operator would inadvertently raise the front-end loader above his head. App. at 491–93. This testimony provides some implication that Newkirk too could foresee that the loader might unintentionally be raised above the user.

Even if the loader were raised above the operator, Newkirk could have prevented the bales it carried from sliding off of the hay-

---

**12.** Newkirk testified that he did not "expect" that the front-end loader would be raised above the operator's head; but, if the loader were raised to that height, and if the hayfork were tilted up, Newkirk testified that he would reasonably expect the bale of hay being lifted to

fall. App. at 922–23. This testimony, viewed in the light most favorable to Ford, *Boeing Company, supra*, 411 F.2d at 374, implies that Newkirk knew that the hayfork was *capable* of being raised above the operator's head.

fork by designing the hayfork with a higher backplate [13] or a clamp [14]. Newkirk testified that he had the "know-how" to design such a safety device, app. at 926, and no evidence suggested that a higher backplate or a clamp would have significantly impaired the usefulness of the hayfork.[15] Evidence showed that some manufacturers design haylifting attachments with safety equipment such as clamps, others do not.[16]

On the ultimate question of whether the risk created by the absence of a higher backplate or clamp was an unreasonable one, the experts were divided. Sewell testified that the absence of these devices rendered the hayfork "a very dangerous instrumentality," app. at 712; Greene testified that the hayfork was not unreasonably dangerous as designed, app. at 528, 533.

We believe that this evidence, especially in light of the difference in expert opinion, created a jury question as to whether the design of the hayfork was unreasonably dangerous, i. e., whether the utility of the hayfork, without a clamp or higher backplate, was outweighed by its risk of harm.

Newkirk argues that strict liability does not apply because it was obvious that a bale of hay would roll off the hayfork if the hayfork was raised to the peak of the front-end loader's stroke. The Texas Supreme Court, rejecting a similar argument, observed that section 402A does not mention the obviousness of the peril as a defense to strict liability. *Rourke v. Garza,*

530 S.W.2d 794, 800 (Tex.1975); *See* W. Kimbler & R. Lesher, *Products Liability* (1979). While obviousness is not a defense stated in section 402A, comment (i) of that section does state that a manufacturer is not liable if his product is not "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." A jury could reasonably conclude that the hayfork was dangerous to an extent beyond that which an ordinary user would contemplate. The hayfork posed a danger only if raised above the user's head. Since it was only necessary to lift the hayfork three or four feet for the purpose of placing the bales of hay onto the lowboy trailer, a user would not necessarily contemplate that the hayfork would rise above his head. The hayfork would reach this height only because of inadvertence or mechanical failure.[17] Thus Ford is not barred, as a matter of law, by the theory of obviousness or by comment (i) from reaching the jury on the question of Newkirk's strict liability.

2. *Newkirk—Negligence*

Ford contends that Newkirk's failure to design the hayfork with a clamp or a higher backplate also constitutes negligent design. "The standard of care required of a manufacturer in the design of products is expressed in Sections 395 and 398 of the *Restatement (Second) of Torts* (1965) . . ." *Gonzales, supra,* 571 S.W.2d 867, 871 (Tex. 1978). Section 395 provides:

13. Testimony by two of plaintiff's experts, George Greene and Leslie Ball, suggested that a higher backplate would have secured the bale that fell on Foster. *See* app. at 528–29, 539–40, 641.

14. The evidence does not show the extent to which a clamp would have increased the cost of the hayfork. However, Sewell testified that such a clamp would not have required an independent hydraulic system; apparently, Sewell believed that a clamp could have been connected to the hydraulic system already existing on the front-end loader. *See* app. at 773.

15. Ball, however, did testify that with a higher backplate, "you would have to pay the price of extra weight, extra cost." App. at 641.

16. Ford sells a haylifting attachment without a clamp. However, Sewell testified that unlike Newkirk's hayfork, Ford's attachment has an automatic leveling device which keeps the load stable. App. at 791–95.

17. Our holding that a rational jury might find that the hayfork was dangerous beyond an ordinary user's contemplation is not inconsistent with our holding, *supra,* that a jury might reasonably conclude that Newkirk could reasonably foresee that the hayfork would inadvertently be taken to this height. A manufacturer's duty of design may require him to foresee risks which would not be contemplated by an ordinary user.

## § 395. Negligent Manufacture of Chattel Dangerous Unless Carefully Made

A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing physical harm to those who use it for a purpose for which the manufacturer should expect it to be used and to those whom he should expect to be endangered by its probable use, is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied.

Section 398, a special application of the rule in section 395, provides:

## § 398. Chattel Made Under Dangerous Plan or Design

A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design.

■ Much of the evidence which we discussed in holding that a jury question exists on the issue of strict liability leads us to conclude that a jury question also exists on the issue of negligent design. Newkirk knew that the hayfork would be attached to a front-end loader. A jury could reasonably find that Newkirk should have foreseen that the hayfork might inadvertently be raised above the operator's head.[18] Yet, Newkirk failed to design the hayfork with a safety device to prevent bales of hay from tumbling onto the operator's compartment. Such a device would not have significantly impaired the utility of the hayfork, but would have prevented Foster's injury. We hold that a jury question exists as to whether Newkirk failed to exercise reasonable care in adopting a safe design.

### 3. Crew—Strict Liability

■ Ford's contention that Crew is strictly liable to Foster is refuted by the language of section 402A. That section only applies to sellers.[19] Crew was not the seller of the hayfork; he was its purchaser.[20] We, therefore, affirm the district court's holding that the question of Crew's strict liability should not have gone to the jury.

### 4. Crew—Negligence

■ Crew, as an employer, owed a duty to Foster, as his employee, to see that the hayfork which he purchased from Newkirk and furnished to Foster for use at work was reasonably safe and free of defects. *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 754 (Tex.1975); *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263, 265 (Tex.1974); *Currie v. Missouri, K. & T. Ry. Co. of Texas*, 101 Tex. 478, 108 S.W. 1167, 1169 (1908); *Restatement (Second) of Agency* § 502 (1958). A jury could reasonably find that Crew breached this duty.

Crew ordered the hayfork from Newkirk, explaining that it would be attached to the front-end loader of a tractor and would be used to lift round, 1,500 pound, bales of hay three or four feet onto a lowboy trailer. Crew furnished the tractor and hayfork to his employee, Foster, for this use. A jury could reasonably conclude that Crew should have foreseen, and protected Foster from, the risk that in so using the hayfork, Foster would raise the hayfork to a position from

18. *See* note 12, *supra*, and accompanying text.

19. Section 402A begins with the words, *"One who sells* any product . . . ." (emphasis supplied). *See* L. Frumer & M. Friedman, 2 *Products Liability* § 16A[4][b][vi] (1979).

20. We acknowledge that Texas courts do not require, "[A] literal sale for the attachment of strict liability. Rather, strict liability attaches whenever 'the transaction by which a product is transmitted into the stream of commerce is "essentially commercial" in character [citing Texas cases].' " *Challoner v. Day & Zimmermann, Inc.*, 512 F.2d 77, 82 (5th Cir.), *vacated and remanded on other grounds*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1976). However, Crew did not, in a commercial transaction, put the hayfork into the stream of commerce; rather, he used it for his own purposes, on his farm.

which its load could slide onto the operator's compartment.[21] Thus, we hold that the issue of Crew's negligence was a question for the jury.

Crew argues, however, that even assuming there is sufficient evidence to establish his negligence toward Foster, he still would not be liable to Ford for contribution under Article 2212. Crew's argument is based on the fact that Article 2212, by its terms, does not permit contribution if either joint tortfeasor has a right to indemnity against the other.[22] *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609, 622–23 (1951). Crew contends that had he been required to pay a judgment to Foster, he would have had a right to indemnity against Ford, because Ford breached its duty under section 402A of the *Restatement* to sell Crew a nondefective tractor. On the basis of *General Motors v. Simmons, supra,* 558 S.W.2d 855, we reject Crew's argument.

In *Simmons*, Johnston, an employee of Feld Truck Leasing Corporation, failed to stop at a traffic signal and drove Feld's truck into a car driven by Simmons. The impact bent the frame of the door on Simmons' car and exploded the glass in the car window into Simmons' eyes, blinding him. Alleging that the glass was defective, Simmons sued General Motors (G.M.) in strict liability and negligence. Simmons also joined Feld and Johnston, alleging negligence in Johnston's driving of the truck. Feld and Johnston sought indemnity from G.M.; G.M. asked for contribution from Feld and Johnston. The jury found the glass to be defective and the sole cause of Simmons' injuries; based on that finding, the trial court rendered judgment against G.M., denying its plea for contribution. The Court of Civil Appeals reversed, holding that as a matter of law, Simmons' injuries were not caused solely by the defective glass, but that they were also caused by Johnston's negligent driving; consequently, the court awarded G.M. contribution from Feld and Johnston and denied the latter's claim for indemnity against G.M. On the issues of contribution and indemnity, the Texas Supreme Court affirmed. *Id.* at 861.

The Supreme Court rejected Feld and Johnston's indemnity claim on the ground that they failed the "imaginary law suit" test of *Austin Road Co. v. Pope*, referred to in the Indemnity section above. The court stated:

> When we view Feld as the plaintiff in an imagined suit against General Motors, we have the Feld vehicle, driven by Johnston, running into the side of the Simmons' car, causing the defective General Motors' glass to scatter into slivers inside the Simmons' car. Feld's damage against General Motors would have to be the liability he incurred by reason of Simmons' injuries. Feld's action would not be for any physical damages Feld, Johnston or their property sustained; it would be only for the liability to Simmons that they incurred. . . .
>
> We ground our decision upon Section 402A of the *Restatement (Second) of Torts* . . .
>
> Section 402A and our decisions . . . have limited the seller's liability to the

---

**21.** With respect to Newkirk's strict liability, we held, *supra*, that a jury question exists as to whether the hayfork was dangerous to an extent beyond that which would be contemplated by an ordinary user, such as Foster. Likewise, in the text above, we hold that a jury question exists as to whether Crew should have foreseen and protected against the risk created by the hayfork. These two holdings are not inconsistent; each indicates only that there is sufficient evidence so that the jury must decide.

On remand, it is possible that the jury might find that Foster should not have contemplated the dangers posed by the hayfork, but that Crew should have foreseen those dangers. We express no opinion as to whether such findings would be inconsistent; that question would depend on several factors, including (1) whether the "contemplation" test used under Section 402A, comment (i) of the *Restatement* is the same as the "foreseeability" test used in the negligence analysis and, (2) whether Crew and Foster are factually and legally in the same position with respect to foreseeing or contemplating the hayfork's dangers.

**22.** Article 2212 provides, in pertinent part, that contribution is available "except in causes wherein the right of contribution or of indemnity, or of recovery, over, by and between the defendants is given by statute or exists under the common law . . . ."

terms of the Restatement Rule which is 'for physical harm thereby caused . . .' Feld and Johnston make no claim that they suffered physical harm. To extend the duty to include *liability* to others would mean that in all cases the seller or manufacturer is subjected to indemnity without regard to the independent torts of others.

558 S.W.2d at 860 (emphasis in original).

Similarly, in an imaginary strict liability suit brought by Crew against Ford, the only item of damage would be the liability Crew incurred by reason of Foster's injury. Crew sustained no personal injury or property damage as a result of Ford's sale of the defective tractor. Since *Simmons* forecloses recovery under section 402A where the sole item of damage is liability to others, Crew's suit against Ford would fail.[23]

Undeterred, Crew claims that *Simmons* does not undermine its argument against contribution because the *Simmons* court left standing the decision in *Heil Co. v. Grant*, 534 S.W.2d 916 (Tex.Civ.App.1976, writ ref'd n. r. e.), where, Crew argues, a co-tortfeasor situated similarly to Ford was denied contribution.[24]

■ The Supreme Court of Texas, in *Simmons*, gave only limited approval to the Court of Civil Appeals decision in *Heil*. According to *Simmons, Heil* was correctly decided only insofar as it was "analogous to the case of an innocent retailer who distributes the manufacturer's defective product. Though strictly liable to an injured plaintiff, the retailer has been granted indemnity against the manufacturer where he is ignorant of a latent defect not reasonably discoverable." 558 S.W.2d at 860.[25] The

**23.** The only distinction between the case *sub judice* and *Simmons* is that the parties seeking indemnity in *Simmons*, Feld and Johnston, were not purchasers or users of the defective product, whereas Crew is a purchaser of the defective tractor. However, the Court of Civil Appeals, applying *Simmons* to facts close to this case, held that even a purchaser of the defective product is not entitled to recover under section 402A if the only damage he sustained was liability to others. *United Tractor, Inc. v. Chrysler Corp.*, 563 S.W.2d 850 (Tex. Civ.App.1978). In *United Tractor*, Guerrero was injured when he was struck by a tow tractor manufactured and assembled by United Tractor and containing a defective component part manufactured by Chrysler Corp. The parties stipulated that Chrysler was strictly liable to plaintiff for selling the defective part and that United Tractor was liable to plaintiff for knowing about the defect, but negligently failing to take corrective action. United Tractor sought indemnity from Chrysler, contending that Chrysler breached its duty under section 402A to sell United a non-defective component. Affirming the trial court's denial of indemnity, the Court of Civil Appeals held:

> In the case now before us, we refuse the request of indemnity under the authority of *General Motors Corp. v. Simmons* . . . United Tractor's claim against Chrysler is for the . . . monetary damage it paid to the injured Guerrero, and is attempting to recover the economic loss under Section 402A of the *Restatement of Torts* 2d. This item of recovery under that Section is prohibited

. . . .
563 S.W.2d at 851.

**24.** In *Heil Co., supra*, 534 S.W.2d 916, plaintiff's decedent was working beneath the raised bed of Vernon Grant's dumptruck. As a result of the defective design of the truck's hoist mechanism, the bed collapsed, killing decedent. The decedent's wife brought a strict liability suit against Heil Co., the manufacturer of the truck, and Heil impleaded Grant. Heil contended that Grant was negligent in permitting decedent to work beneath the raised bed and claimed contribution. The Court of Civil Appeals rejected this claim, holding that:

> Even if Vernon Grant were negligent in permitting Decedent to work beneath the raised bed without a brace, the death resulted, at least in part, from the defective design of the hoist mechanism. This defective design constituted a breach of the Heil Co.'s duty to both Vernon Grant and Decedent. Thus, as between the joint tortfeasors, Vernon Grant would have been entitled to indemnity from the Heil Co. and would not have been liable to the Heil Co. for contribution.

534 S.W.2d at 927.

**25.** The precedential strength of *Heil* was further weakened by the *Simmons* court's favorable discussion of *South Austin Drive-In Theatre v. Thomison*, 421 S.W.2d 933 (Tex.Civ.App. 1967, writ ref'd n. r. e.). *Simmons* observed that *Thomison* was factually similar to *Heil*, but reached a contrary result, *i. e.*, the manufacturer was granted contribution from the purchaser of the defective product. The instant case, in all material respects, is indistinguishable from *Thomison*. *See also United Tractor, Inc., supra*, note 23 (post-*Simmons*

court distinguished that situation from a case where the indemnitee's liability to plaintiff is based not simply on distributing the manufacturer's defective product, but rather on independent tortious conduct which is a proximate cause of plaintiff's injury. *See id.* at 861.[26] *Simmons'* explanation of *Heil* makes clear that *Heil* does not control the right of contribution between Crew and Ford. Crew's liability to Foster rests not on the fact that Crew equipped Foster with Ford's defective tractor, but rather on the possibility that Crew was negligent in furnishing Foster with the hayfork and that this act was an independent cause of Foster's injury. Thus, under *Simmons*, Ford would not have to indemnify Crew had Crew been required to pay a judgment to Foster. Consequently, we reject Crew's argument that Ford is barred from contribution under Article 2212.

## CONCLUSION

The district court's holding that Ford is not entitled to indemnity from Crew and Newkirk is affirmed. The district court's dismissal of Ford's claim for contribution against Crew and Newkirk is reversed. On the contribution question, a new trial is ordered to determine if Ford is entitled to contribution from Newkirk on the basis of Newkirk's negligence or strict liability, and to determine if Ford is entitled to contribution from Crew on the basis of Crew's negligence. The district court's holding that Ford is not entitled to contribution from Crew on the basis of Crew's strict liability is affirmed.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

case denying purchaser's claim for indemnity against manufacturer without even distinguishing *Heil*).

**26.** The *Simmons* court stated that independent negligent conduct by the indemnitee was a factor "influencing the award of indemnity." 558 S.W.2d at 861. This factor was present in *Simmons* itself and was the ground upon which indemnity was denied in several cases cited favorably by the court, *Schuster v. Steedley*,

406 S.W.2d 387, 390 (Ky.1966); *Kenyon v. F.M.C. Corp.*, 286 Minn. 283, 176 N.W.2d 69, 71–72 (1970); and *South Austin Drive-In Theatre v. Thomison, supra,* 421 S.W.2d at 947–48. Further, the indemnitee's independent negligent conduct is the significant feature which distinguishes the *Thomison* case from the *Simmons* court's characterization of the *Heil* case. *See* note 25, *supra.*