Wyman W. COLE, Plaintiff-Appellant,

v.

ELLIOTT EQUIPMENT
CORPORATION,
Defendant,

McCullagh Leasing, Inc.,
Defendant-Appellee.

No. 80–2394
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

Aug. 21, 1981.

Arnold, Lavender, Rochelle, Barnette & Franks, E. Ben Franks, Texarkana, Ark., for plaintiff-appellant.

Hubbard, Patton, Peek, Haltom & Roberts, James N. Haltom, Texarkana, Tex., for Elliott Equipment Co.

C. Edward Fowler, Jr., Barbara Pilo, Dallas, Tex., for McCullagh Leasing, Inc.

Before BROWN, POLITZ and TATE, Circuit Judges.

POLITZ, Circuit Judge:

In this diversity jurisdiction suit, Wyman W. Cole asserts a products liability claim against the manufacturer and the third-party financier of an aerial basket. Determining that the arrangement by which the equipment was financed, although labeled a "lease" was actually a financing agreement, the trial court concluded that § 402A of the Restatement of Torts [1] was not applicable and granted defendants' motion for summary judgment dismissing the claim. We affirm.

Cole, a lineman employed by R. S. Goodman Company, was injured when the sixty-five foot aerial basket he occupied drew an arc from high voltage transmission lines and burned. The aerial basket was manufactured by Elliott Equipment Corporation [2] and was purchased by Cole's employer. Goodman purchased the equipment in 1972. The president of Goodman selected the equipment, negotiated the specifications and price and accepted delivery from the manufacturer. McCullagh provided the funds for the purchase but did not participate in the design or manufacture or in the selection by Goodman. McCullagh never had possession of the aerial basket; it does not have nor does it claim to have expertise or special knowledge about the utility contracting business; and it neither acquires nor holds for sale or lease equipment such

---

1. Restatement, Second, Torts § 402A:

 Special Liability of Seller of Product for Physical Harm to User or Consumer
 (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
 (a) the seller is engaged in the business of selling such a product, and
 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

 (2) The rule stated in Subsection (1) applies although
 (a) the seller has exercised all possible care in the preparation and sale of his product, and
 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

2. Since the appeal was filed the dispute with Elliott Equipment Corporation has been resolved.

as the aerial basket. McCullagh, a wholly owned subsidiary of Commercial Credit Company, is engaged in business finance.

The motion for summary judgment is necessarily based on a determination of the legal relationship existing between Goodman and McCullagh, specifically, the arrangement with respect to the aerial basket.

The written agreement under which McCullagh provided the funds to Goodman for the purchase of the Elliott basket is entitled "Vehicle Lease." The instrument was executed by Goodman and McCullagh in 1971 to finance the acquisition of trucks and other equipment. The "lease" contains a number of terms including: (1) title is retained in lessor; (2) "the relationship between lessor and lessee shall always and only be that of lessor and lessee"; (3) lessee must secure, for the benefit of lessor, liability and property damage insurance; (4) rent is to be payable monthly; (5) at any time after 12 months lessee may sell the equipment; (6) lessee is completely responsible for maintenance; and (7) the term of the lease is determined by the lessee. As stated in the affidavit of Frederick Chase, the assistant regional manager for McCullagh, the rental figure includes a "service fee" which is based on an interest factor related to the prime rate of interest.

The trial judge, in granting defendants' motion for summary judgment, reasoned that regardless of its title, the instrument was more a financing agreement than a conventional lease. From that linchpin, the trial judge concluded that § 402A of the Restatement did not apply.

Cole raises two issues on appeal: (1) apart from any consideration of whether § 402A applies, the trial court erred in granting the summary judgment, and (2) the trial court erred in concluding that § 402A was not applicable.

 Regarding the first issue, Cole advances two arguments. He first contends that summary judgment was improper because the conclusion that the document in question was a financing agreement and not a commercial lease is a factual conclusion, one which is disputed. This contention is devoid of merit. The classification of the document is a question of law and not one of fact. Citing a Texas decision,[3] Cole next argues that summary judgment was improper because there was insufficient evidence to support the trial judge's finding that the agreement was a financing contract. In federal court, including cases based on diversity jurisdiction, the Federal Rules of Civil Procedure, and the decisions of the federal courts interpreting these rules, control as to procedural matters. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).[4] Under the Federal Rules, the moving party must demonstrate that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Once the moving party has carried this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If a genuine issue of fact is not shown, summary judgment is appropriate. *Frank C. Bailey Ent. v. Cargill, Inc.*, 582 F.2d 333 (5th Cir. 1978).

 In the case at bar, McCullagh relied upon the testimony of R. S. Goodman, Jr., the president of R. S. Goodman Company, R. S. Goodman, Sr. and Frederick Chase, the assistant regional manager for McCullagh, to establish the specifics of the ar-

---

**3.** Cole cites as his authority the Texas intermediate appellate court decision in *Davis Bros. v. Misco Leasing*, 508 S.W.2d 908 (Tex.Civ.App. 1974). Even if this case were applicable, it is not dispositive. *Davis* involved an examination of whether the lease in question created a valid security interest under the Uniform Commercial Code. Such a determination involves different considerations than our inquiry into whether a document labeled as a lease is, in actuality, a financing agreement.

**4.** Federal courts in diversity cases apply a federal test for determining whether the evidence is sufficient to defeat motions for a directed verdict and for a judgment notwithstanding the verdict. *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969). *See also Foster v. Ford Motor Co.*, 616 F.2d 1304, 1309 n.10 (5th Cir. 1980).

rangement between the two companies, particularly with respect to the purchase and financing of the aerial basket in question. Cole did not advance any facts to challenge or contradict those advanced by McCullagh. The trial court did not err in utilizing the summary judgment vehicle to resolve this dispute. We find no genuine issue of material fact in this record.

■■ As relates to the second issue, we remind that a federal court exercising diversity jurisdiction is "in effect, sitting as a state court." *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). As such, the trial court is bound to determine and apply Texas law, a task requiring an examination of the decisions of the state's appellate courts. As a reviewing court, we are reluctant to substitute our views of the state law for that of the trial judge. *Bernhardt v. Polygraph Co. of America*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956). This policy is grounded in the rationale that a federal trial judge who sits in a particular state and has practiced before its courts is "better able to resolve certain questions about the law of that state than is some other federal judge who has no such personal acquaintance with the law of the state." Wright, *Federal Courts* § 58, at 271 (3d ed. 1976). "A federal district court judge's determination on the law in his state is, as a rule, entitled to great weight on review." *Avery v. Maremont Corp.*, 628 F.2d 441, 446 (5th Cir. 1980).

Strict liability actions in Texas are governed by the rule expressed in § 402A of the Restatement of Torts (Second). *Foster v. Ford Motor Co.*, 616 F.2d 1304 (5th Cir. 1980). The Texas Supreme Court has held that § 402A applies to a lessor, if he is in the business of commercially leasing products of the type causing injury. *Rourke v. Garza*, 530 S.W.2d 794 (Tex.1975) (§ 402A held applicable to a commercial lease of industrial equipment). The Texas Supreme Court has also held that a defendant will incur § 402A liability only if he actually introduces the product into the stream of commerce through a transaction essentially commercial in character. *Armstrong Rubber Co. v. Urguidez*, 570 S.W.2d 374 (Tex. 1978) (§ 402A does not apply to a bailment for mutual benefit that is not accompanied by a sale of goods or service).

We find no precedent directing or even suggesting that § 402A liability should be extended to a "financing lease" such as the one at bar. The trial judge concluded that such an extension was unwarranted, reasoning that policy considerations which impose strict liability on a commercial lessor "do not apply when the lessor is not marketing or supplying, but is merely a financier whose collateral is the product." [5] Finding no controlling Texas cases, the trial judge relied on sister state decisions in *Francioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 372 A.2d 736 (1977), and *Brescia v. Great Road Realty Trust*, 117 N.H. 154, 373 A.2d 1310 (1977), both of which held § 402A inapplicable to a financing agreement under facts similar to those now before us.

The trial judge reasoned that the expedient of calling the agreement a lease, and requiring the "lessee" to secure liability insurance, did not warrant the application of § 402A liabilities. To the contrary, the district court found that the circumstances surrounding the agreement—that Goodman selected the equipment and negotiated the purchase price with Elliott, that McCullagh never saw the equipment and never had the equipment in its actual or constructive possession, that McCullagh had no business dealings with Elliott, and that McCullagh

---

5. There are sound business reasons which accrue to both sides of the transaction when a purchase is financed through this type of lease arrangement rather than through a more conventional financing scheme. The lessee benefits since he is preserving established lines of credit from other sources and can write off the entire lease payment as deductible for tax purposes. The lessor benefits from the increased business due to the attractiveness of the arrangement to lessees, and also because many of the regulations and requirements which pertain to financing and credit do not apply to a "lease" arrangement. For a discussion of the mechanics of a finance lease and the benefits to both sides *see* Comment, *Finance Lessor's Liability for Personal Injuries*, 1974 U.Ill.L.F. 154, 155–56.

does not hold such equipment for sale or lease—strongly militated against application of § 402A.

Cole argued to the trial court and now urges on appeal that § 402A *should* be extended to include financing agreements such as that between McCullagh and Goodman. The trial judge, after a careful examination of the agreement, the circumstances surrounding its execution, and the policies involved in the application of § 402A to commercial leases, was persuaded that it should not be extended to cover "finance leases." We agree.

The judgment of the district court granting the motion for summary judgment is AFFIRMED.