**COMMONWEALTH LIFE INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**Francis Craig NEAL, Defendant-Appellee.**

**No. 81–3520
Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

March 5, 1982.

Baldwin & Haspel, Jacob J. Meyer, New Orleans, La., for plaintiff-appellant.

Kim G. Mayhall, Baton Rouge, La., for defendant-appellee.

Before CLARK, Chief Judge, RANDALL and WILLIAMS, Circuit Judges.

PER CURIAM:

Plaintiff Commonwealth Life Insurance Company ("Commonwealth") appeals from the district court's, 521 F.Supp. 812, denial of a preliminary injunction restraining a former employee, defendant Francis Craig Neal, from soliciting Commonwealth policyholders. Having determined that the district court did not abuse its discretion in denying the injunction, we affirm.

The basic facts are not in dispute. Neal was employed in 1968 by First National Life Insurance Company as an insurance salesman handling primarily "industrial" or burial insurance. In 1971, First National merged with Commonwealth. Neal and all other First National salesmen who wished to remain as employees were required to execute an employment contract which pro-

vided, *inter alia*, that upon termination of the employer/employee relationship:

Agent shall thereafter for a period of one year refrain from further solicitation or servicing of policyholders of the Company or of Fire & Casualty or of any agency which Agent has been assigned, or in any way interfering with existing policies.

The contract was dated November 22, 1971. Subsequent to the merger, Neal continued in his employ with Commonwealth until December 12, 1980, when he resigned and became an independent insurance salesman.

Neal established agency relationships with several other insurance companies and went into the insurance business for himself. He has been and is currently soliciting and selling insurance to policyholders of Commonwealth. Commonwealth sought a preliminary injunction in the United States District Court for the Middle District of Louisiana to enforce the non-solicitation provisions of the contract. The trial court suggested to counsel that a trial on the merits be consolidated with the hearing on the motion for preliminary injunction as permitted under Rule 65(a)(2); however, since counsel objected to consolidation, the trial court did not require it. At the hearing for preliminary relief, counsel for Neal argued that the non-solicitation provisions of the contract relied upon by Commonwealth were void due to Louisiana's prohibition on non-competition clauses. La.Rev. Stat. Ann. § 23:921 (West). After a thorough review of the relevant Louisiana jurisprudence, the district court decided that the state's highest court would hold that non-solicitation agreements are indistinguishable from non-competition agreements for purposes of § 23:921. It then considered whether, nevertheless, the provisions in question might be enforceable under a statutory exception which permits non-competition clauses to be enforced if the employer has made sufficient training and advertising expenditures on behalf of the employee. The district court found that Commonwealth had not made a sufficient showing of such expenditures. It therefore denied the motion for preliminary relief, holding that Commonwealth had not demonstrated a likelihood of success on the merits. Commonwealth filed a timely appeal to this court.

*Scope of Review of a Denial of Injunctive Relief*

Our scope of review is conditioned by the procedural posture in which this case comes before us. We are dealing not with an appeal from a judgment entered after a full trial on the merits but rather from a denial of an injunction made after a hearing for preliminary relief. In general, a preliminary injunction is justified upon plaintiff's showing of the following requirements:

(1) that plaintiff has a substantial likelihood of success on the merits;

(2) that a substantial threat exists that plaintiff will suffer an irreparable injury if the injunction is not granted;

(3) that the threatened injury to plaintiff outweighs the threatened harm that the injunction will cause defendant; and

(4) that the granting of the injunction will not disserve the public interest.

The plaintiff bears the burden of persuasion on all four elements. *Spiegel v. City of Houston*, 636 F.2d 997 (5th Cir. 1981); *Clements Wire & Manufacturing Company, Inc. v. NLRB*, 589 F.2d 894 (5th Cir. 1979); *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567 (5th Cir. 1974). However, the grant or denial of a preliminary injunction rests in the sound discretion of the trial judge and will not be disturbed upon review unless there is an abuse of discretion. *Foley v. Alabama State Bar*, 648 F.2d 355 (5th Cir. 1981); *Compact Van Equipment Co. v. Leggett & Platt, Inc.*, 566 F.2d 952 (5th Cir. 1978); *Johnson v. Radford*, 449 F.2d 115 (5th Cir. 1971).

The four factors listed above which are to be considered in determining the propriety of injunctive relief are mixed questions of fact and law. This circuit has made clear that in the course of reviewing the actions of the district court for abuse of discretion, the district court's findings of

fact will be upheld unless clearly erroneous. Fed.R.Civ.P. 52(a). On the other hand, the district court's conclusions of law are subject to broad review and will be reversed if incorrect. *Roberts v. Austin*, 632 F.2d 1202, 1208 (5th Cir. 1980), *cert. denied,* —— U.S. ——, 102 S.Ct. 527, 70 L.Ed.2d 395 (1981); *Buchanan v. United States Postal Service*, 508 F.2d 259, 267 n.24 (5th Cir. 1975).

■ In the present case Commonwealth is contesting the trial judge's denial of relief on the grounds that a likelihood of success on the merits was not established. This decision was based on two findings: (1) that § 23:921 applied to non-solicitation as well as non-competition clauses as a matter of Louisiana law, and (2) that Commonwealth had made an insufficient factual showing of substantial expenditures made on behalf of Neal to remove Neal's contract from the prohibitions of § 23:921. The first of these involves a pure question of statutory interpretation and is subject to broad review; the second involves a mixed question of fact and law.

*Issues of Local Law*

■ There is still one further wrinkle to our analysis. It is well settled that in diversity cases which involve questions of local law, an appellate court will show deference to the opinion of a district court and give its views great weight. *Cole v. Elliott Equipment Corp.*, 653 F.2d 1031 (5th Cir. 1981); *Watson v. Callon Petroleum Co.*, 632 F.2d 646 (5th Cir. 1980); *Avery v. Maremont Corp.*, 628 F.2d 441 (5th Cir. 1980). This is especially so when "a statutory scheme is less than clear and capable of varying interpretation." *Black v. Fidelity and Guaranty Insurance Underwriters, Inc.*, 582 F.2d 984 (5th Cir. 1978). *See also Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1975), and cases cited therein at 346 n.10, 96 S.Ct. at 2078 n.10. As explained in *Cole, supra,* the reason for this deference is that a federal trial judge who sits in a particular state and has practiced before its courts is better able to resolve difficult questions about the law of that state than other federal judges lacking such

experience. 653 F.2d at 1034. The soundness of this rationale is aptly demonstrated in this case, where we are dealing with a construction of the law of Louisiana, a civil law jurisdiction where common law principles of contract have only limited relevance. Thus, although we will not abdicate our responsibility as an appellate court to pass upon questions of law, the expertise of the district court in local law matters is entitled to some deference, and we will be "reluctant to substitute our views of the state law for those of the trial judge." *Id. Accord, Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956). With the principles underlying our analysis and review of this case firmly established, we now consider the district court's decision.

*Scope of the Non-Solicitation Provision*

■ A threshold issue is easily disposed of. Neal points to the language of the non-solicitation provision which states that an employee may not solicit "policyholders of the Company . . . or of any agency to which Agent has been assigned," and argues that this language only prohibits solicitation of policyholders to whom the employee was assigned when he first joined the company. Since Neal was never assigned any policyholders, he cannot be in violation of this clause. The district court rejected this strained reading of the contract, and so do we. It is clear that "to which Agent has been assigned" refers to the agency and not the policyholders. Neal was assigned to the Port Allen Agency, and the clear purpose of the non-solicitation provision is to prevent him from soliciting Port Allen customers or any other clients of Commonwealth. The question now before us is whether this can be done under Louisiana law.

*Applicability of Section 23:921 to Non-Solicitation Agreements*

■ The statute in question, La.Rev.Stat. Ann. § 23:921 (West), provides as follows:

§ 921. *Competing business; contracts against engaging in forbidden; exceptions*

No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years. As amended Acts 1962, No. 104, §§ 1, 2.

The question of statutory interpretation before us is whether a non-solicitation agreement is a contract "not to engage in any competing business" under the meaning of the statute. The Louisiana Supreme Court has not specifically addressed this question, but there is a considerable jurisprudence in the four Circuit Courts of Appeals which form the intermediate level of the Louisiana judicial system. A review of those cases follows.

The leading case on this question is *National Motor Club of Louisiana v. Conque*, 173 So.2d 238 (La.App. 3d Cir. 1965), written by Judge Tate, later a Justice of the Louisiana Supreme Court and presently a member of this court. *Conque* involved a contract prohibiting an automobile club employee from soliciting customers of his former employer. The Louisiana Supreme Court had, in *Martin-Parry Corp. v. New Orleans Fire Detection Service*, 221 La. 677, 60 So.2d 83 (1952), held that an agreement by a former employee not to raid the for-

mer employer's staff for his newly created business was not covered under § 23:921. The court in *Conque* noted that *Martin-Parry* had characterized a "no raiding" clause as "vastly different in nature" from a non-competition clause. 60 So.2d at 85. The court in *Conque* thus considered whether a non-solicitation clause was of the same nature as a non-competition clause and was therefore equally contrary to public policy:

> ... [F]urther thought has convinced us that the object of the present agreement is not "lawful", unless supported by valid training and advertising expenses. By LSA–R.S. 23:921, the legislature has forbidden, with exceptions we have held not here applicable, that no employer may require "any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another." The essence of the automobile club business is the selling of memberships to friends, acquaintances, and the general public. To require an employee to limit his activities in this regard after he ceases his employment, is to require him not to engage in a competing business, in violation of the statutory prohibition.

173 So.2d at 244. Thus *Conque* held that non-solicitation agreements are equally prohibited by § 23:921. The Third Circuit has been consistent in this view. *Orkin Exterminating Company v. Broussard*, 346 So.2d 1274 (La.App. 3d Cir.), *cert. denied*, 350 So.2d 902 (La.1977); *Orkin Exterminating Company v. Foti*, 287 So.2d 569 (La.App. 3d Cir. 1973), *aff'd*, 302 So.2d 593 (La.1974).

Louisiana's Fourth Circuit had reached a contrary result in *Bookkeeper's Business Service, Inc. v. Davis*, 208 So.2d 1 (La.App. 4th Cir. 1968). However, in *Alexander & Alexander, Inc. v. Simpson*, 370 So.2d 670 (La.App. 4th Cir.), *cert. denied*, 371 So.2d 836 (La.1979), the Fourth Circuit reversed itself, and specifically endorsed the position of the Third Circuit that non-solicitation agreements were prohibited by § 23:921. 370 So.2d at 671.[1]

1. Commonwealth points to *John Jay Esthetic Salon, Inc. v. Woods*, 377 So.2d 1363 (La.App.

4th Cir. 1979), and *National Oil Service, Etc. v. Brown*, 381 So.2d 1269 (La.App. 4th Cir. 1980),

The Second Circuit also had held in an earlier case that a contract reaching only non-solicitation of customers was enforceable. *Delta Finance Co. of Louisiana v. Graves*, 180 So.2d 85 (La.App. 2d Cir. 1965). However, the decision in *Delta Finance* was based in part upon the court's understanding of the 1962 amendment to § 23:921. That amendment had added the language which provided an exception to the general prohibition if the employer had expended monies on the employee's behalf. The court concluded that:

By so amending LSA–R.S. 23:921 the legislature has removed the broad injunction against noncompeting contracts as being contrary to public policy. The statute as presently written gives approval to general noncompetitive contracts meeting the requirements of the 1962 amendment, and in so doing, places such agreements beyond condemnation of public policy. A fortiori, contractual provisions which merely restrict the employee's activity as to certain particulars of the employer's business should be respected.

180 So.2d at 88. However, the view that the 1962 amendment had in any way eroded the strong public policy in Louisiana against non-competition agreements was laid to rest in *Orkin Exterminating Co., Inc. v. Foti*, 302 So.2d 593 (La.1974). In that case the Supreme Court of Louisiana resolved a conflict in the circuits over whether the 1962 amendment required only a nominal expenditure of funds by the employer to escape the prohibitions of § 23:921, or whether a "substantial" expenditure was necessary. The Louisiana Supreme Court endorsed the "substantial expenditure" rule

of *Conque, supra,* as being in harmony with the state's strong public policy against non-competition agreements. It overruled the cases relying on the nominal expenditure rule, including *Aetna Finance v. Adams*, 170 So.2d 740 (La.App. 1st Cir. 1964), *cert. denied*, 247 La. 489, 172 So.2d 294 (1965), the leading case announcing that rule, and a case relied on in the Second Circuit's decision in *Delta Finance*. Because the underlying rationale of *Delta Finance* has been rejected by the Louisiana Supreme Court in *Foti*, its precedential strength is seriously undermined, as the Second Circuit itself noted in *Target Rental Towel, Inc. v. Byrd*, 341 So.2d 600 (La.App. 2d Cir. 1977).

Finally, we note that the other Louisiana circuit, the First, has not spoken at all on the issue of non-solicitation agreements. Thus, we have a situation in which two of the four intermediate appellate circuits have held that such agreements violate § 23:921. Of the two remaining circuits, one has not spoken at all on the issue. The other circuit had decided the question the other way, but has recently recognized that the rationale of its earlier decision has been undermined by the Louisiana Supreme Court's decision in *Foti*. Given this legal situation, the district court concluded that the law of Louisiana was that non-solicitation agreements were prohibited by § 23:921. We agree. The great weight which we give the district court's views of local law adds to our conviction of the propriety of the result, and indeed, we are impressed by the thorough review of the relevant Louisiana jurisprudence which appears in the district court's opinion.[2]

as proof that the Fourth Circuit's position has not changed. However, *John Jay* involved a non-raiding clause, not a non-solicitation clause; it was thus clearly controlled by the Louisiana Supreme Court's decision in *Martin-Parry, supra. National Oil Service* held that a purported non-competition agreement was not entered into. It stated in a footnote that Louisiana courts had found various types of agreements not to be non-competition agreements prohibited by § 23:921, and included in its list non-solicitation agreements. The district court stated that this was mere dicta, and that it certainly did not overcome the specific en-

dorsement of the Third Circuit view which was the basis of decision in *Alexander & Alexander, Inc. v. Simpson, supra.* We agree.

2. Commonwealth has argued that this case should be certified to the Louisiana Supreme Court for a determination of the question. We find such a procedure unduly cumbersome and unnecessary in the circumstances of this case, where we think that the trend of decision in the Louisiana courts is clear. The endorsement of *Conque* by the Supreme Court of Louisiana in *Foti*, albeit on a different ground, and its reassertion of the strong public policy against

*Applicability of Statutory Exceptions*

■ We next consider whether expenditures by Commonwealth may have put it within the exception listed in the statute. These expenditures must be designed for the training of the employee or advertisement of the employer's business. The Louisiana Supreme Court held in *Foti, supra,* that

> ... the amendment contemplated validating a non-competition agreement only where substantial funds were spent in special training or on special advertisement of the employee himself (rather than generally of the business).

302 So.2d at 595–96.

. . . .

> However ... normal expenses of administration and supervision—such as employee sales and training meetings, the time spent breaking in a new employee, training courses in the administrative needs of the employer itself—cannot be considered the sort of "training" expense intended to justify the heavily disfavored non-competition agreement.

*Id.* at 597.

*Foti* also made clear that "substantiality" is to be measured not only in absolute terms but in relation to the period of the employee's service. Where an employer has received the benefit of his investment through the employee's subsequent service, the amount expended becomes insubstantial in relation to the period of service. *Id.* at 598.

*Training Expenses*

■ Commonwealth pointed to several items which it argued constituted a sub-

stantial expenditure. These included $438.00 for attendance in "Agents Fundamental School" in July of 1973, two "Life Underwriter's Training Courses", at $80.00 apiece, in 1974 and 1975, and an "Advanced Training Seminar", costing $438.00, in 1977. We think the district court properly rejected the first two sets of expenses as not constituting special training expenditures under the meaning of *Foti.* The district court found that the courses involved constituted normal expenses of administration and supervision and that every employee of the company was required to attend them. As for the "Advanced Training Seminar", we agree with the district court's assessment that this expense was easily recouped by Commonwealth in the three years before Neal's resignation in 1980. Indeed, it was undisputed that Neal was one of Commonwealth's most successful insurance salesmen, and the evidence indicated that Neal's work for Commonwealth generated close to $275,000 annually in gross premiums.

■ We also think that the District Court was correct in disregarding the expenditures for certain "Leader's Club Conferences" which Neal attended. The district court found that these conventions were in reality a reward to successful salesmen and were primarily recreational activities combined with awards ceremonies and "pep" talks by company executives. We agree that this did not constitute "special training" within the meaning of *Foti.*

*Advertising Expenses*

■ Commonwealth argues that substantial expenditures were made to promote

---

agreements which limit competition, reinforces our beliefs on that score.

Commonwealth makes much of the District Court's statement that since the only decisions squarely on point are those of intermediate level courts, the district court would "guess" what the Louisiana Supreme Court would decide. It argues that this undercuts the reliance which should be given to the district court's conclusions. We disagree. As stated above, the thoroughness of the district court's treatment of local law, as evidenced by its scholarly opinion, belies any such accusation. As federal courts sitting in diversity, both we and the district court must make a decision as to appli-

cable state law, and where the state's highest court has not spoken on a question, federal courts are required to give due consideration to the decisions of intermediate courts in ascertaining the law of the state. *E.g., Commissioner v. Estate of Bosch,* 387 U.S. 456, 464–65, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967). *See generally* 1A Moore's Federal Practice ¶ 0.307[2] (2d ed. 1976). This task was performed by the district court, and we agree with its conclusion. As for the use of the word "guess" in the district court's opinion, we do not believe that mere informality of expression is a sufficient ground for reversal of a well-researched and well-reasoned decision.

Neal through advertisements. It points to several advertisements which ran in Baton Rouge newspapers and which it claims totaled some $4,000 in cost.

The advertisements are of two types. The first type features a large picture of Claude Jarreau, Sales Manager at the Port Allen Agency, with smaller pictures of various staff members, including Neal, featured below. The ads congratulate Jarreau and his staff on winning an "Executive Vice President's Trophy" for "operational efficiency." One version of these ads actively solicits persons interested in working for Commonwealth as a salesman. These list the name and telephone number of Port Allen Agency Manager Ron Moreau. The other version merely lists the name and telephone number of Agency Manager Brad Thibodaux, and the address of the Port Allen Agency.

The second type of advertisement features a picture of Neal and congratulates him on winning an Executive Vice President's Trophy. It lists his history and training with the company and his accomplishments. Most of these advertisements solicit persons interested in the type of "rewarding sales career exemplified" by Neal, and instruct them to contact Ron Moreau at the Port Allen Agency. One advertisement contains no solicitation for new employees. One other advertisement lists Neal as a member of a "Chairman's Millionaire Cabinet" and states that he can be contacted "concerning your insurance needs".

The district court found that these advertisements did not specifically promote Neal as the person to contact for the purchase of insurance from Commonwealth and thus fall within the meaning of *Foti* and its progeny. Instead, the court found that these advertisements tended to promote sales of Commonwealth Insurance generally (especially the group advertisements), and that they were mainly designed to solicit new employees, not new business.[3] We agree with this assessment. We think that the strongest argument for promotion of

Neal *per se* can be made for the "Chairman's Millionaire Cabinet" advertisement. However, the record discloses that no more than $300.00 was spent by Commonwealth for this advertisement. The minor amount of this expenditure can hardly be considered "substantial," especially in comparison with the large amount of revenues which Neal brought in. We thus agree with the district court's conclusion that there were no substantial expenditures for either special training or special promotion of Neal by Commonwealth. This conclusion means that the prohibitions of § 23:921 prevent enforcement of Commonwealth's non-solicitation clause. Commonwealth has thus failed to demonstrate a substantial likelihood of success on the merits. This being the case, we think the district court did not abuse its discretion when it denied Commonwealth's motion for preliminary relief. The judgment of the district court is affirmed.

AFFIRMED.

---

3. Statements of Commonwealth employees indicated a further purpose: The advertisements featuring a single person were placed by the company as a reward for previous successful service by a salesman. If a salesman had reached a certain level of productivity he would be permitted to place one advertisement in a local newspaper of the salesman's choice.