## NCH CORPORATION

v.

## Lynn N. BROYLES, et al.

### Civ. A. No. 82–3728.

United States District Court, E.D. Louisiana.

Nov. 30, 1982.

---

Daniel Lund, New Orleans, La., for plaintiff.

Charles F. Seabolt, New Orleans, La., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEER, District Judge.

On November 5, 1982, this matter came on for hearing of plaintiff's motion for a preliminary injunction. At the conclusion of the evidence, the matter was taken under consideration. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are so adopted.

### Findings of Fact

1. The Mantek Division of NCH Corporation is engaged in the manufacture, distribution and sale of disinfectants, soaps, detergents, cleaners, insecticides, chemical specialities, paints, water treatments, maintenance chemicals, chemicals for control of water pollution, chemicals for the improvement of turf, lawn and grounds, adhesives, glues, degreasing and sanitary supplies and floor maintenance chemicals.

2. Mantek sells its products throughout the United States by highly motivated commissioned sales representatives.

3. Lynn N. Broyles began working for Mantek as a sales representative in January, 1969. At that time, Mantek had no sales representatives (or customers) in the territory assigned to Broyles.

4. At the time he was employed, Broyles executed a sales representative's agreement with Mantek and, subsequently, in April, 1970, he signed a district sales manager's agreement with Mantek. Under the terms of each agreement, Broyles agreed to sell plaintiff's products in the assigned territory of Terrebonne, Lafourche, St. Mary, Assumption, St. James and parts of St. Martin parishes and also agreed that he would not at any time divulge to others—or use for his own benefit—any trade secrets or confidential information belonging to plaintiff. He also agreed not to solicit plaintiff's employees during the term of his employment and for a period of eighteen months following termination of such employment.

5. Mantek compiles, maintains, and updates on a periodic basis, certain "route books" for the use of its sales representatives. These books consist of the names and addresses of customers, the identity of persons to be contacted for orders, and a sales history of products purchased, quantities purchased, container sizes, prices paid

and frequency of purchases. Broyles relied—and continues to rely—on the information contained in these books in selling plaintiff's products and, now, in selling the products of plaintiff's competitors.

6. In March of 1982, Broyles requested and received an updated version of his route books.

7. Over the course of 1981, Broyles became dissatisfied with his employer. This discontent became acute in the months of February through June of 1982, so that, on July 15, 1982, Broyles resigned from NCH Corporation, and, on the same date, executed a written contract of employment with Share Corporation to sell that company's products in a territory in Louisiana which includes the territory formerly assigned to him by Mantek. Share Corporation is a competitor of Mantek.

8. In August, 1982, Broyles began selling Share's products in his Share-assigned territory to various customers including but not necessarily limited to those he called upon (and sold to) while employed by Mantek.

9. Also in August, 1982, Broyles returned the route books, noted above, to Mantek.

10. Subsequent to his resignation, Broyles did solicit his brother, Don Broyles, to terminate his employment with plaintiff and to start working for Share Corporation. He also spoke with plaintiff's employee, Gene Schwartz, about employment with Share Corporation but only after Schwartz initiated the discussion regarding same.

11. In January, 1981, defendant Carol B. Broyles, executed a "Technical Sales Representative's Agreement" with plaintiff. On March 30, 1981, she terminated her employment with plaintiff.

### Conclusions of Law

1. A preliminary injunction properly issues where there is (1) a substantial likelihood that plaintiff will prevail on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant; and (4) granting the preliminary injunction will not disserve the public. *Commonwealth Life Insurance Company v. Neal,* 669 F.2d 300 (5th Cir.1982).

2. Louisiana law prohibits any unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. La.R.S. 51:1405.

3. Pursuant to this authority, courts have declined to enjoin defendants from misappropriation of confidential customer information, unless the former employee was not acting solely from memory, and such information was not easily ascertainable and generally available to the public. *Gulf Toy House, Inc. v. Bertrand,* 306 So.2d 361 (La.App. 3rd Cir.1975).

4. Moreover, the Louisiana legislature has recently enacted the Uniform Trade Secrets Act which prohibits misappropriation of trade secrets. La.R.S. 51:1431 et seq. That statute specifically defines a trade secret as "information, including a . . . compilation . . . that: (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

5. The route books utilized by Broyles while employed by plaintiff consist of detailed customer information compiled at considerable expense and effort by plaintiff and are regarded as highly sensitive and valuable by the plaintiff. Broyles acknowledged as much in the contracts he executed with plaintiff.

6. Broyles has, more likely than not, misappropriated this confidential cus-

tomer information at least to the extent that he did not rely merely upon his memory in soliciting his former Mantek customers on behalf of his new employer. The details of the pertinent sales history of individual customers is not information which is easily ascertainable and generally available to the public.

7. Based on the foregoing, it is the opinion of this court that plaintiff has demonstrated a likelihood that it will prevail on the merits.

8. This factor alone, however, is insufficient to warrant issuance of a preliminary injunction. Considering the evidence, this court cannot say that the threatened injury to plaintiff outweighs the threatened harm the preliminary injunction may do to defendant. Much of the harm resulting from defendant's alleged misappropriation has already been suffered by plaintiff. Defendant has returned his route books and will not have access to any future route books compiled by plaintiff. To enjoin defendant at this time from soliciting sales of customers he cultivated while working for plaintiff effectively would bar defendant from earning his accustomed living in the area in which he has worked and lived for years.

9. Accordingly, plaintiff's motion for a preliminary injunction is denied, said denial in no way to impair plaintiff's rights to claim any and all relief to which it may be entitled after a full scale trial on the merits.