**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-10996
Summary Calendar
_____


GEORGE VERNON CHILES,

Plaintiff-Appellant,


VERSUS

BONNIE DAVIS; RICHARD WALKER; MELVIN MORGAN;
and TARRANT COUNTY, TEXAS,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Northern District of Texas
(4:94-CV-499-A)
_____

June 27, 1996

Before SMITH, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]


George Chiles appeals a judgment as a matter of law ("j.m.l.")
in favor of Melvin Morgan, Bonnie Davis, and Richard Walker, in
their individual capacities, and Tarrant County, Texas.  Finding no

[*] Local Rule 47.5.1 provides:  "The publication of opinions that have no
precedential value and merely decide particular cases on the basis of well-
settled principles of law imposes needless expense on the public and burdens on
the legal profession."  Pursuant to that rule, the court has determined that this
opinion should not be published.

error, we affirm.

I.

Chiles was employed as an event services worker at the Fort Worth/Tarrant County Convention Center until he resigned on August 23, 1993. Morgan was the executive director of the convention center, and Davis was the operations manager. Both had supervisory authority over Chiles. Walker was employed at the convention center as a security guard and had no authority over Chiles.

In February 1993, Chiles had an encounter with Walker in which Walker made threatening and disparaging remarks to Chiles.[1] On two occasions following that encounter, Walker demanded to search a nylon bag Chiles was carrying, stating on one occasion that Chiles would steal a forklift if he could get it into the bag.

Chiles's problems with Morgan developed shortly thereafter. In March,[2] Morgan removed Chiles from classified employment with Tarrant County. Chiles appealed Morgan's decision to the Tarrant County Civil Service Commission, which reinstated him after a sixty-day suspension. During his hearing before the commission, however, Chiles accused Morgan of using his position as the executive director of the convention center to steal from Tarrant

_____

[1] The facts set forth are taken from the joint pretrial stipulations of the parties.

[2] Unless otherwise noted, all dates refer to 1993.

County. Chiles later aired his allegations publicly in an interview with KXAS-TV.

Chiles subsequently filed a lawsuit against Morgan, claiming that Morgan had unlawfully removed him from classified employment. Although Chiles did not serve his complaint on Morgan until after he resigned, Morgan and Davis were aware of the lawsuit.

Convention center employees worked on a rotating schedule, alternating between day and evening shifts. Chiles had informed Davis that he considered the rotating schedule a positive aspect of his job because it enabled him to work evenings. Nonetheless, between June 1 and August 3, Chiles received fewer evening shifts than he had enjoyed previously.

Mike Amador was Chiles's immediate supervisor. On July 30, he informed Chiles that Morgan had singled Chiles out at staff meetings. Amador underwent surgery two days later, which kept him from full-time work for several weeks.

Joe LoVaglio and Chris Mendoza were convention center employees. On August 2, they told Chiles that Davis had expressed concern that Morgan would find out that Chiles had been working an evening shift and doing light work, as Morgan had told her that Chiles was to do neither. They also informed Chiles that Davis had indicated that she had rewritten Chiles's work schedule at Morgan's instruction. Mendoza claimed to have heard Morgan state that he did not want to see Chiles at the convention center, but that he wanted Chiles to work only days. The following day, LoVaglio told

3

Chiles that Davis had accused Chiles of entering her office and "g[etting] in my face" about her statements.

On August 8, Chiles tendered his resignation to Morgan. He found his situation hopeless, considering that he had been assigned to work undesirable hours and that Davis had falsely accused him of "g[etting] in [her] face" about her comments. He was apparently concerned as well by Mike Amador's absence, and he believed that Davis's relationship with various police officers would prompt her to file criminal charges against him.[3]

On August 10, Chiles had another encounter with Walker. Chiles arrived at work early that day to prepare for a convention. He asked Walker to turn on the lights and open a storage room for him so that he could begin work. Walker began to question Chiles as to why he was at work, stating that "[Chiles] must think Walker was pretty dumb if [Chiles] thought Walker was going to let [him] in to steal something." Chiles then started to leave, but first asked Walker whether he could return the materials he had assembled.

Walker responded by yelling at Chiles to leave the building, which Chiles did. Walker later filed an incident report in which he claimed that Chiles had "grabbed up his tools and started demanding that I do certain things for him," "became very angry and left the building," and "was very mentally hyped up, possibly due

_____

[3] Although the stipulations are not specific, presumably Chiles was worried that Davis would fabricate charges.

4

to drug abuse or some other type of mental disturbance, severe enough to be creating a security risk." On August 11, Morgan accepted Chiles's resignation.

## II.

Chiles subsequently filed this lawsuit, asserting a number of claims. Against Morgan and Tarrant County, he asserted claims for conspiracy to deprive him of his civil rights, constructive discharge, alteration of an important condition of employment, arbitrary and unreasonable classification, and retaliation for protected speech. Against Davis and Walker, he asserted claims for conspiracy to deprive him of his civil rights, constructive discharge, libel, and intentional infliction of emotional distress. He also asserted a libel claim against Davis.

The case was tried to the district court. Prior to trial, the parties set out extensive stipulations, the bulk of which we have recounted above. At trial, Chiles offered his own testimony and that of LoVaglio. After Chiles presented his case, the defendants moved for j.m.l., and the court granted judgment under FED. R. CIV. P. 52(c).[4]

## III.

---

[4] If during a trial without a jury a party as been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule.

FED. R. CIV. P. 52(c).

6

We review a district court's findings of fact under rule 52 for clear error. *See* FED. R. CIV. P. 52(a) ("[F]indings of fact . . . shall not be set aside unless clearly erroneous."). We review conclusions of law *de novo*. *See Commonwealth Life Ins. Co. v. Neal*, 669 F.2d 300, 304 (5th Cir. 1982).

We first consider Chiles's objection to the court's finding that the individual defendants were entitled to qualified immunity. His sole objection to this finding is that the district court was not entitled to grant qualified immunity to the individual defendants because they did not affirmatively pled that defense.

The defendants pled this defense sufficiently. In their initial answer to Chiles's complaint, the defendants asserted that "conclusory allegations of conspiracy are insufficient to overcome their [the individual defendants'] qualified immunity from this suit." Even if this were not sufficient to raise the defense, the joint pretrial order specified that the defendants were claiming qualified immunity.[5]

Chiles makes no other objections to the finding of qualified immunity, and we therefore conclude that the individual defendants were entitled to it. This moots Chiles's remaining objections to the dismissal of his claims against the individual defendants.

Chiles contends that the district court clearly erred by dismissing his claims against Tarrant County for alteration of an

---

[5] The pretrial order dictated that "to the extent necessary all pleadings be deemed amended to conform to this Pretrial Order."

important condition of employment, arbitrary and unreasonable classification, and retaliation for protected speech. The district court apparently dismissed these claims on the ground that Chiles suffered no damages from the defendants' behavior.[6] Although Chiles summarizes his evidence on these claims, none of that evidence shows that Chiles suffered injury as a result of the defendants' conduct. We therefore conclude that the finding was not clearly erroneous.

Chiles also objects to the finding that he was not constructively discharged. To prevail on a constructive discharge claim, a plaintiff must show that "a reasonable person in the employee's position would have felt compelled to resign." *Shawgo v. Spradlin*, 701 F.2d 470, 481 n.12 (5th Cir.), *cert. denied*, 464 U.S. 96 (1983). The district court found that a reasonable person in Chiles's position would not have felt the need to terminate his employment and rejected Chiles's constructive discharge claim.

Chiles first argues that the court's finding was contrary to the stipulation that Chiles "considered the situation after getting off from work on August 8, 1993 and concluded that he was in a hopeless situation." We find no contradiction. The stipulation shows only that Chiles found his situation subjectively intolerable; it does not prove that the situation was objectively so.

---

[6] The court made a number of factual findings and did not specify the particular finding(s) that enabled it to dismiss each claim. In the case of the above claims, the only finding that would have entitled the defendants to j.m.l. was the finding that Chiles had suffered no damages from the defendants' conduct.

8

Chiles also recites the evidence he offered to show that his situation was objectively intolerable. We set out most of Chiles's evidence in our discussion of the facts, and we cannot conclude from those facts that the finding was clearly erroneous.

Chiles next objects to the court's dismissal of his libel and slander claims. The district court found that the offensive communications were subject to a qualified privilege. Chiles argues that the privilege should not apply because the defendants acted with actual malice. The only evidence Chiles offered at trial regarding any of his libel or slander claims, however, was his own testimony regarding his encounter with Walker on August 10. We cannot conclude from that testimony that the district court erred by finding that Walker did not act with actual malice in filing an incident report.

Finally, we consider the intentional infliction of emotional distress claims. The district court found that none of the defendants' conduct was a proximate cause of injury to Chiles, and that even if Chiles was injured, the injury was not foreseeable. Chiles contends that this finding was clearly erroneous in light of the evidence and stipulations. The evidence, however, consisted primarily of the facts we set forth above, and we cannot conclude on the basis of those facts that the finding was clearly erroneous.

The judgment is AFFIRMED.